UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROBERT GUTHRIE,

                Plaintiff,

                                                      REPORT AND
  -against-                                        RECOMMENDATION
                                                      21 CV 5929 (KAM)(RML)

RAINBOW FENCING INC. and
LAWSON BURGE,

                Defendants.
-----------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated September 30, 2022, the Honorable Kiyo A. Matsumoto, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted, and that plaintiff be awarded a total of $91,243 in damages.

## BACKGROUND AND FACTS

        Plaintiff Robert Guthrie ("plaintiff") commenced this wage and hour action on October 25, 2021, against defendants Rainbow Fencing Inc. ("RFI" or "corporate defendant") and Lawson Burge ("individual defendant," or together with the corporate defendant, "defendants") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"). (Complaint, filed Oct. 25, 2021 ("Compl."), Dkt. No. 1.) The individual defendant was allegedly in charge of the operations and management of RFI, a for-profit corporation with a principal place of business at 1261 East New

York Avenue, Brooklyn, New York.  (Id. ¶¶ 8-9, 11.)  Plaintiff asserts that defendants employed him as a welder from in or around 2014[1] to on or about June 15, 2021.  (Id. ¶¶ 15-16.)

Both defendants were properly served with the summons and complaint.  (See Affidavit of Service of James Perone, sworn to Oct. 27, 2021, Dkt. No. 5; Affidavit of Service of Juan D. Aguirre, sworn to Nov. 19, 2021, Dkt. No. 6.)  Defendants have failed to answer or otherwise move with respect to the complaint.  Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to both defendants on January 28, 2022.  (See Request for Certificate of Default, filed Jan. 28, 2022, Dkt. No. 7.)  On February 2, 2022, the Clerk of the Court noted the defaults of both defendants.  (See Clerk's Entry of Default, dated Feb. 2, 2022, Dkt. No. 8.)  On April 21, 2022, plaintiff moved for default judgment.  (See Motion for Default Judgment, dated Apr. 21, 2022, Dkt. No. 10.)  Judge Matsumoto referred plaintiff's motion to me on September 30, 2022.

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay him minimum and overtime wages and (2) provide proper wage notices and wage statements.  (Compl. ¶¶ 1-3, 19-22; see also Plaintiff's Memorandum of Law in Support of His Motion for a Default Judgment Against Defendants as to Liability and Damages, dated Apr. 21, 2022 ("Pl.'s Mem."), Dkt. No. 10-1, at 1.)  Plaintiff requests an award of minimum wages, overtime wages, liquidated damages, and statutory damages.  (Pl.'s Mem. at 13-14.)

---

[1] Plaintiff does not provide a specific start date for his employment with defendants in his complaint or in any of the materials supporting the motion for default judgment.

#### DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, as explained above, plaintiff has demonstrated that he properly served defendants with the summons and complaint. Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c). (See Declaration of Service of Abdul Hassan, dated Apr. 22, 2022, Dkt. No. 11.)

A. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)

3

(citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law."  Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL.  (See Compl. ¶¶ 17-20.)  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

    1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on October 25, 2021, alleges willful violations of the FLSA.  (See Compl. ¶¶ 20, 40.)  Therefore, the FLSA's three-year statute of limitations applies.  Because plaintiff alleges that he was not properly paid wages from October 25, 2018 through June 15, 2021, I find that those claims are timely under the FLSA.  (Id. ¶ 15.)  However, the portions of plaintiff's claims that occurred prior to October 25, 2018 are not timely under the FLSA.[2]  Plaintiff may only recover for the federal violations that occurred on or after October 25, 2018.  Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.  See N.Y. Lab. L. §§ 198(3), 663(3).  Accordingly, plaintiff may recover under the NYLL for the period of October 25, 2014 to June 15, 2021.  (See Pl.'s Mem. at 1.)

---

[2] Specifically, plaintiff's claims arising during the period of 2014 to October 24, 2018 are not timely under the FLSA.

4

2. <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendants' employee, and that defendants were employers subject to the coverage of each statute. For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g). Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer. An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." [3] 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." Id. § 203(a).

"Employers are subject to FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." <u>Reyes v. Tacos El Gallo Giro Corp.</u>, No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), <u>report and recommendation adopted</u>, No. 20 CV 3474, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted). "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he

---

[3] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); <u>Oaxaca v. Hudson Side Cafe Inc.</u>, No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that he was hired as a manual worker and worked for defendants from approximately 2014 until June 15, 2021.  (Declaration of Robert Guthrie in Support of Motion for Default Judgment, dated Apr. 20, 2022 ("Pl.'s Decl."), Dkt. No. 10-2 ¶¶ 3-11.)  In addition, plaintiff alleges that the corporate defendant exceeded the $500,000 threshold set by the FLSA and employed about twenty-two employees during the relevant period.  (Compl. ¶¶ 14, 25, 26-31, 39; Pl.'s Mem. at 5.)  To further support the assertion that the corporate defendant was engaged in interstate commerce as defined by the FLSA, plaintiff states that defendants: (1) conducted business with vendors and other businesses outside the State of New York; (2) conducted business in interstate commerce involving the purchase of construction and welding materials and other essential supplies for its business; (3) paid taxes and other monies to agencies and entities outside the State of New York; (4) engaged in credit card transactions involving banks and other institutions outside the State of New York; and (5) utilized instrumentalities of interstate commerce such as the United States mail, email, and telephone systems.  (See Compl. ¶¶ 25-30.)

Although plaintiff does not specify what materials and supplies moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA because it is likely that at least some of the materials required to operate a fencing company originated from outside of New York.  See, e.g., Luna v. Gon Way Constr., Inc., No. 16 CV 1411, 2017 WL 835321, at *5 (E.D.N.Y. Feb. 14, 2017), report and recommendation adopted, No. 16 CV 1411, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (holding that a construction company would require

materials that moved through interstate commerce); Wing Kwong Ho v. Target Const. of NY, Corp., No. 08 CV 4750, 2011 WL 1131510, at *8 (E.D.N.Y. Mar. 28, 2011) (same). Accordingly, I find that plaintiff has established that he is a covered employee under the FLSA and the NYLL.

       3.    Employer Status of Corporate and Individual Defendants

Plaintiff seeks to hold two defendants—one corporation and one individual—liable for his unpaid wages. (Compl. ¶¶ 8-12; Pl.'s Decl. ¶¶ 3, 6, 8-12; Pl.'s Mem. at 1.) To establish the corporate defendant's liability under the FLSA and NYLL, plaintiff must allege that RFI was an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition. 29 U.S.C. § 203(s)(1). As discussed above, plaintiff has sufficiently established that RFI was his employer and that it was engaged in commerce. (See Compl. ¶¶ 14, 25, 26-31, 39; Pl.'s Mem. at 5.)

To hold the individual defendant liable under the FLSA and NYLL, plaintiff must allege that the individual defendant was his "employer" within the broad meaning of 29 U.S.C. § 203(d). See Fermin, 93 F. Supp. 3d at 35-37. The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists. See Carter v. Dutchess Cmty. Coll., 738 F.2d 8, 12 (2d Cir. 1984). These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Here, plaintiff alleges that the individual defendant interviewed him on behalf of the corporate defendant, set his schedule and duties, supervised his work, set his rate of pay and was

7

responsible for paying him wages, communicated with him on an almost daily basis concerning his work for the corporate defendant, and ultimately fired him. (Pl.'s Decl. ¶¶ 6-10.) Thus, plaintiff has sufficiently alleged all four of the Carter factors and I therefore find that the individual defendant was plaintiff's employer. Accordingly, plaintiff has established the liability of both defendants under the FLSA and NYLL.

    B. Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests damages in the total amount of $88,134.26 for unpaid minimum and overtime wages, liquidated damages, and wage notice and statement violations. (Pl.'s Mem. at 2, 14; see also Hassan Declaration, dated Apr. 21, 2022 ("Hassan Decl."), Dkt. No. 10-3, at 2, 3.) I will address each in turn.

    1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No.

8

12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l. Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked. Plaintiff asserts that he worked five to six days a week during his employment. (Pl.'s Decl. ¶ 13.) He alleges that he worked 44.5 hours when he worked five days a week, and 54.5 hours when he worked six days a week. (Id.)

    a. *Minimum Wage*

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. LAB. L. § 652. The FLSA required defendants to pay plaintiff a minimum hourly wage of $7.25 at all relevant times. 29 U.S.C. § 206(a)(1). However, New York law obligated defendants to pay plaintiff a minimum hourly wage of $8.75 from December 31, 2014 to December 30, 2015; $9.00 from December 31, 2015 to December 30, 2016; $11.00 from December 31, 2016 to December 30, 2017; $13.00 from December 31, 2017 to December 30, 2018; $13.75 from December 31, 2018 to December 30, 2019; and $15.00 from December 31, 2019 to the end of plaintiff's period of

9

employment.[4] N.Y. LAB. L. § 652(a)(i). Because New York's minimum wage is higher than the federal minimum wage, plaintiff may recover those amounts. 29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

Plaintiff alleges that he was paid $12.50 an hour "for all hours worked including [his] overtime hours up until January 2020 when [his] rate was changed to $17.50 an hour for all hours worked including [his] overtime hours." (Pl.'s Decl. ¶ 19.) Therefore, plaintiff was paid below minimum wage from December 31, 2017 to January 2020 and requests unpaid minimum wages for the years 2018 and 2019. (Id. ¶ 21; see also Pl.'s Mem. at 10-11.) Plaintiff's damages calculation table indicates that in 2018 and 2019, plaintiff worked eighteen six-day workweeks and twenty-eight five-day workweeks. (Pl.'s Mem. at 10.)

| Unpaid Minimum Wage Calculations | | | | | | | |
|---|---|---|---|---|---|---|---|
| Time Period | Days Per workweek | Weeks | Hours | Pay Rate | Required Minimum Wage | Minimum Wage Owed | Unpaid Minimum Wages Owed |
| 2018 | 6 | 18 | 40 | $12.50 | $13.00 | $0.50 | $360 |
| 2018 | 5 | 28 | 40 | $12.50 | $13.00 | $0.50 | $560 |
| 2019 | 6 | 18 | 40 | $12.50 | $13.75 | $1.25 | $900 |
| 2019 | 5 | 28 | 40 | $12.50 | $13.75 | $1.25 | $1,400 |
| | | | | | | | **TOTAL:** $3,220 |

As reflected in the above chart, to calculate the damages that plaintiff incurred because of defendants' failure to pay New York's minimum wage, the difference between the

---

[4] This is the minimum wage for "large employers." A "large employer" is defined as an "employer of eleven or more employees," N.Y. LAB. L. § 652(1)(a)(i). Plaintiff alleges that defendants employed twenty-two or more employees. (See Compl. ¶ 14.) Therefore, defendants are a large employer under the NYLL.

applicable minimum wage and his pay rate is multiplied by forty – the number of hours for which he should have been paid minimum wage. See Long Lin, 2019 WL 3716199, at *3. That number is then multiplied by the number of weeks plaintiff worked during the time periods at issue to determine the total amount of minimum wages owed to plaintiff. Based on the calculations in the above table, I respectfully recommend that he be awarded a total of $3,220 in unpaid minimum wages.

      b. *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages. (See Compl. ¶¶ 19-20, 40.) Plaintiff is entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Because plaintiff's recovery will be greater under the NYLL, damages will be calculated based on his NYLL unpaid wages claim.

Plaintiff alleges that he consistently worked at least 44.5 to 54.5 hours per week and that defendants never paid him overtime compensation. (See Compl. ¶ 18; Pl.'s Decl. ¶¶ 13-14.) To calculate the overtime compensation he is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the

11

applicable minimum wage. See Long Lin, 2019 WL 3716199, at *3. This results in the amount of overtime compensation owed to plaintiff on a weekly basis. To obtain the total overtime compensation owed for each period, the weekly amount owed is multiplied by the number of weeks in that period. Based on the calculations in the below table, I respectfully recommend that plaintiff be awarded $42,421.50 in unpaid overtime wages.

| Unpaid Overtime Wage Calculations | | | | | | | |
|---|---|---|---|---|---|---|---|
| Time Period | No. of Weeks | Weekly Overtime Hours | Minimum Wage | Regular Rate of Pay | 150% of Minimum Wage or Regular Rate[5] | Weekly Overtime Due | Period Overtime Due |
| 2015 | 3 | 14.50 | $8.75 | $12.50 | $18.75 | $271.88 | $815.63 |
| 2015 | 5 | 4.50 | $8.75 | $12.50 | $18.75 | $84.38 | $421.88 |
| 2016 | 18 | 14.50 | $9.00 | $12.50 | $18.75 | $271.88 | $4,893.75 |
| 2016 | 28 | 4.50 | $9.00 | $12.50 | $18.75 | $84.38 | $2,362.50 |
| 2017 | 18 | 14.50 | $11.00 | $12.50 | $18.75 | $271.88 | $4,893.75 |
| 2017 | 28 | 4.50 | $11.00 | $12.50 | $18.75 | $84.38 | $2,362.50 |
| 2018 | 18 | 14.50 | $13.00 | $12.50 | $19.50 | $282.75 | $5,089.50 |
| 2018 | 28 | 4.50 | $13.00 | $12.50 | $19.50 | $87.75 | $2,457.00 |
| 2019 | 18 | 14.50 | $13.75 | $12.50 | $20.63 | $299.06 | $5,383.13 |
| 2019 | 28 | 4.50 | $13.75 | $12.50 | $20.63 | $92.81 | $2,598.75 |
| 2020 | 12 | 14.50 | $15.00 | $17.50 | $26.25 | $380.63 | $4,567.50 |
| 2020 | 28 | 4.50 | $15.00 | $17.50 | $26.25 | $118.13 | $3,307.50 |
| 2021 | 3 | 14.50 | $15.00 | $17.50 | $26.25 | $380.63 | $1,141.88 |
| 2021 | 18 | 4.50 | $15.00 | $17.50 | $26.25 | $118.13 | $2,126.25 |

---

[5] Plaintiff's regular rate of pay was lower than the applicable minimum wage in 2018 and 2019, so his overtime wages for that period are calculated using the applicable minimum wage. Otherwise, plaintiff's overtime wages are calculated using his regular rate of pay.

|  |
|---|
| **TOTAL:** $42,421.50 |

   2.   Liquidated Damages

Plaintiff additionally requests liquidated damages for his unpaid minimum and overtime wages. (See Pl.'s Mem. at 11-12); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same time period, but that the standard for awarding such damages under both statutes is the same). The NYLL allows plaintiffs to recover liquidated damages in the amount of 100 percent of minimum wages and overtime wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). Here, defendants have not answered or otherwise appeared in this action, much less demonstrated a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded $45,621.50 in liquidated damages, which is the amount equal to his unpaid minimum wages and overtime compensation.

   3.   Wage Notices & Wage Statements

Finally, plaintiff seeks $10,000 total in statutory damages for defendants' failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Pl.'s Mem. at 12-13.) New York's Wage Theft Prevention Act ("WTPA") requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Electronics, Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022). Section 195(3) requires employers "to provide, for each pay period, a statement ("wage

statement") showing how that pay was computed including deductions." Id. Plaintiff asserts that he never received a wage notice or statement from defendants. (See Compl. ¶¶ 21-22; Pl.'s Decl. ¶¶ 22-23; Pl.'s Mem. at 13.)

The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). Consequently, courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing." Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court.").

Plaintiff has not alleged that he suffered any harm or injury due to defendants' failure to provide wage notices or wage statements. As such, I find that plaintiff has failed to establish standing for the wage notice and statements claims and thus is not entitled to statutory damages.

14

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted and that default judgments be entered against all defendants, jointly and severally. Regarding damages, I respectfully recommend that plaintiff be awarded a total of $91,243 as follows: $3,200 in unpaid minimum wages, $42,421.50 in unpaid overtime wages, and $45,621.50 in liquidated damages.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Matsumoto and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
December 13, 2022